# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

SHAWN WAYNE WHATLEY,

    Plaintiff,

v.

DARRELL HART; RODNEY SMITH; and MICHAEL GRIFFIN,

    Defendants.

CIVIL ACTION NO.: 5:12-cv-142

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while housed at Telfair State Prison in Helena, Georgia and Ware State Prison in Waycross, Georgia. By Order dated October 8, 2013 this Court dismissed Plaintiff's action for failure to exhaust his administrative remedies. (Doc. 51.) Plaintiff appealed that decision to the United States Court of Appeals for the Eleventh Circuit, and that court reversed this Court's Order of dismissal. (Doc. 69.) The Eleventh Circuit remanded the case to this Court to make factual determinations regarding Plaintiff's exhaustion of administrative remedies.

For the reasons which follow, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss. The Court should **DISMISS WITHOUT PREJUDICE** Plaintiff's excessive force claim against Defendant Rodney Smith and Plaintiff's deliberate indifference claims against Defendants Darrell Hart and Michael Griffin because Plaintiff failed to exhaust his administrative remedies as to those claims. As these are the only remaining claims in this case, the Clerk of Court should be directed to enter the appropriate judgment of dismissal.

# BACKGROUND[1]

Plaintiff filed this cause of action on December 10, 2012, due to events which occurred nearly two years earlier. (Doc. 1.) Plaintiff alleges that, on January 12, 2011, he was beaten by Defendant Smith and two unidentified officers at Telfair State Prison. (Id. at p. 6.) A few hours after the beating, Plaintiff was transferred to Ware State Prison. (Id. at p. 7.) Upon his arrival at Ware State Prison, Plaintiff showed his injuries to Defendant Hart, who instructed Plaintiff to fill out a medical sick call request and stated that Plaintiff would "be ok." (Id. at p. 3.) Plaintiff was eventually taken to the medical exam room after he experienced difficulty breathing and passed out due to pain. (Id. at p. 8.) Although nurses in the medical unit "gasped [when they] looked at [Plaintiff's] injuries," he was given only Tylenol and instructed to rest. (Id.) The following day, Defendant Griffin also observed Plaintiff's injuries. (Id. at p. 10.) Although Plaintiff informed Defendant Griffin that he was having difficulty breathing, experiencing excruciating pain, and had blood in his urine, Defendant Griffin also suggested Plaintiff take Tylenol and submit another medical sick call request. (Id.)

Plaintiff alleges that he filed three grievances relevant to his excessive force and deliberate indifference claims. First, on January 18, 2011, Plaintiff submitted an informal grievance regarding his beating and lack of medical care. (Doc. 33, pp. 9–10, 49.) Plaintiff received no response to that informal grievance and, therefore, filed an appeal to the Office of the Commissioner in April 2011. (Id. at p. 52.) In that appeal, he explained that he had been "severely and unjustly beaten" and then transferred from Telfair to Ware State Prison. (Id.) On February 9, 2011, Plaintiff was transferred to Georgia Diagnostic and Classification Prison, where he filed another grievance—Grievance 80327—on February 10, 2011. (Doc. 19-5.) In

---

[1] The Court takes the following facts from Plaintiff's Complaint and assumes them to be true, as it must at this stage.

Grievance 80327, Plaintiff alleged that he was in "imminent danger" and requested that he be transferred to a non-state facility. (Id.) He also sought protection "from all Georgia [Department of Corrections] staff/employees, due to being severely beaten and transferred without treatment." (Id.) Grievance 80327 was rejected on February 17, 2011, for requesting a transfer—a non-grievable issue. (Id. at p. 2.)

On March 7, 2011, Plaintiff filed Grievance 80940. (Doc. 19-8, p. 4.) Whereas Plaintiff's previous Grievance 80327 addressed substantive claims related to his beating, Grievance 80940 addressed procedural claims. Specifically, Plaintiff asserted in Grievance 80940 that prison officials had failed to properly adhere to grievance procedures when addressing his previously filed Grievance 80327. (Id.) Grievance 80940 was denied, and Plaintiff filed a formal grievance. (Id. at p. 5.) In the warden's rejection of the formal grievance, the warden not only provided procedural reasons for rejecting Grievance 80940, but also noted that: "Per phone conversation with Nurse Gore, you were seen at medical upon arrival [at GDCP] on 2-9-11 and there was no evidence supporting your claim of being severely beaten." (Id. at p. 3.) Plaintiff then appealed the warden's rejection of Grievance 80940. However, the Office of the Commissioner rejected Plaintiff's appeal because the underlying grievance, Grievance 80327, had addressed a non-grievable issue. (Id. at p. 2.) Plaintiff then filed the instant Complaint.

After service of the Complaint, Defendants filed a Motion to Dismiss, arguing that Plaintiff failed to exhaust his available administrative remedies before bringing this action. (Doc. 19.) This Court granted Defendants' Motion to Dismiss on October 8, 2013. (Doc. 51.) Plaintiff filed a Motion to Alter or Amend Judgment on October 22, 2013, (doc. 53), which the Court denied on January 28, 2014, (doc. 66). Plaintiff filed a Notice of Appeal on November 7,

2013, (doc. 55), and on September 30, 2014, the Eleventh Circuit Court of Appeals appointed counsel to represent Plaintiff on appeal, (doc. 67).

On September 23, 2015, the Eleventh Circuit reversed this Court's prior dismissal of Plaintiff's Complaint and remanded to this Court for factual determinations regarding Plaintiff's efforts at exhaustion. (Doc. 69.) Specifically, the Eleventh Circuit held that, as to Plaintiff's January 18, 2011 grievance, this Court did not follow the two-step exhaustion analysis set forth in Turner v. Burnside, 541 F.3d 1077, 1080–81 (11th Cir. 2008). Id. Additionally, the Court of Appeals found that, as to Grievance 80940, this Court enforced a procedural bar that the prison may have waived.

On November 17, 2015, this Court directed the parties to file supplemental briefs consistent with the opinion of the Eleventh Circuit, (doc. 72). Having reviewed the parties' briefs and conducted the requisite analyses, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss due to Plaintiff's failure to exhaust administrative remedies.

## DISCUSSION

**I.  Dismissal of Plaintiff's Complaint for Failure to Exhaust his Available Administrative Remedies**

### A. Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523; see also O'Brien v. United

4

States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit"). Additionally, the Supreme Court recently "held that the PLRA's [Prison Litigation Reform Act's] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 2016 WL 3128839, at *5 (June 6, 2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

5

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. Johnson, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

### B. The Georgia Department of Corrections' Grievance Procedure

Standard Operating Procedure ("SOP") IIB05-0001 sets forth the three (3) steps an inmate had to complete under the Georgia Department of Corrections' grievance procedure in effect at the time the events giving rise to this cause of action arose.[2] First, an inmate had to file an informal grievance "no later than 10 calendar days from the date" the inmate was aware or should have been aware "of the facts giving rise to the grievance." (Doc. 19, p. 7.) An inmate was to be given a written response to his informal grievance within ten (10) calendar days of the

---

[2] This SOP was amended with an effective date of December 10, 2012, and no longer requires an inmate to file an informal grievance. However, because this cause of action arose prior to the amendment, the previous version of this SOP is relevant for this Court's purposes.

6

counselor's receipt of the inmate's informal grievance. (Id.) If the inmate was dissatisfied with the resolution of his informal grievance, he was to file a formal grievance within five (5) days of his receipt of the written resolution of his informal grievance. (Id.) Once an inmate received the Warden's response to his formal grievance and was dissatisfied with that response, he had five (5) business days to file an appeal with the Commissioner. (Id. at p. 8.) In the alternative, if the Warden's response time was exceeded, the inmate was to file an appeal of his grievance with the Commissioner's Office, unless a one-time extension of ten days' time was authorized and the inmate was notified. (Id.) The Commissioner's Office had 90 calendar days after receipt of the appeal to respond. (Id.) Time limits could be waived for "good cause" shown. (Id. at p. 7.)

An inmate could file a grievance regarding "[a]ny condition, policy, procedure, action or lack thereof that affects inmates and is in the control of the Department of Corrections[ ]", other than, for example, housing assignments. (Id. at pp. 9–10.) If an inmate attempted "to grieve an item that is not grievable . . ., is out of time, . . . or otherwise does not comply with the requirements of [SOP IIB05-0001], it will be rejected, noting the specific reason for this action." (Doc. 19-3, p. 5.) An inmate was limited to having two pending, non-emergency grievances at the institutional level per week. (Id.)

### C. Standard of Review

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for

summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77. With these standards and procedures in mind, the Court now addresses whether Plaintiff exhausted his administrative remedies as to his claims against Defendants.

**D.     Assessment of Plaintiff's Exhaustion**

   **1.     January 18, 2011 Grievance**

As discussed above, the Eleventh Circuit reversed this Court's prior Order dismissing Plaintiff's Complaint to permit this Court to "properly undertake the two-step <u>Turner</u>" analysis regarding Plaintiff's purported January 18, 2011 grievance. (Doc. 69, p. 15.) In their supplemental brief, Defendants concede that, under <u>Turner</u> Step One, Plaintiff's claims are not subject to dismissal because the Court must accept as true Plaintiff's claim that prison staff deliberately ignored his grievances. (Doc. 77, p. 3.) However, Defendants contend that Plaintiff's Complaint is subject to dismissal under <u>Turner</u> Step Two. (<u>Id.</u> at p. 4.) First, Defendants provide a copy of Plaintiff's voluminous grievance filing history and note that it contains no record of Plaintiff's January 18, 2011 grievance. (<u>Id.</u>) Second, Defendants argue that Plaintiff's grievance filing history shows that the grievance process was not only readily available to Plaintiff, but that prison officials correctly documented and processed a plethora of grievances filed by Plaintiff in the past. (<u>Id.</u>) Therefore, Defendants contend that Plaintiff's purported January 18, 2011 grievance never received a response because it was never filed.

Plaintiff responds that he filed a grievance on January 18, 2011, and he has submitted documentation in support of that argument. First, Plaintiff points to a document labeled "Exhibit X," an informal grievance receipt dated January 18, 2011 which bears the signatures of two grievance counselors. (Doc. 33, p. 49.) Plaintiff avers that this signed receipt proves he submitted an informal grievance on January 18, 2011, even though no record of that document exists within his grievance history. Next, Plaintiff points to a document labeled "Exhibit X-1," an appeal form in which Plaintiff re-asserts his claims of being beaten and being denied medical care. (Doc. 33, p. 52.) Within that appeal form, Plaintiff also claims that prison staff never

responded to his informal grievance dated January 18, 2011. (Id.)  Finally, Plaintiff points to a document labeled "Exhibit X-2," a letter addressed to Counselor Donald Petrie in which Plaintiff requests to file a grievance pertaining to his beating and subsequent denial of medical care. (Id. at p. 55.)  At the bottom of this letter is a note, allegedly written by Petrie, explaining that "[f]iling a grievance is not gonna do you much good," followed by Petrie's signature. (Id.) Plaintiff contends that these documents show that he filed an informal grievance on January 18, 2011 and utilized all the grievance procedures available to him, but was thwarted from properly exhausting his administrative remedies.[3]  In sum, Plaintiff claims that his January 18, 2011 grievance is missing from his grievance history because prison officials deliberately ignored and disposed of that grievance in an effort to conceal Plaintiff's beating.

In response, Defendants contend that the informal grievance receipt, appeal form, and letter submitted by Plaintiff are forged and false documents. (Doc. 77, p. 5.)  In support of that argument, Defendants point to the declarations of Edwina Johnson, Chief Counselor at Ware State Prison, and Donald Petrie, a grievance counselor at Ware State Prison. (Docs. 41-1, 41-2.) Edwina Johnson declares that the informal grievance receipt is not authentic and that the signature on that document is not the signature of the grievance counselor responsible for accepting informal grievances. (Doc. 41-1, p. 4.)  Similarly, Donald Petrie has declared that he wrote neither the note attached to the letter nor signed the document. (Doc. 41-2, p. 4.)

Plaintiff disputes Defendants' contention that he falsified and forged his informal grievance form receipt, appeal form, and letter to Petrie, averring that "the denial of these individuals . . . does [not] automatically make [their assertions] true[,] especially with the

---

[3] Moreover, Plaintiff claims that his grievance filing history shows that he was well-versed in proper grievance filing procedure and regularly followed those procedures, noting that he "often utilized the Georgia Department of Corrections (GDC) grievance process and . . . did so on many occasions to the completion of the third and final appeal step in the process." (Doc. 79, p. 5.)

individuals having significant interest either directly or indirectly in this case and ultimately with the untruths of their sworn declarations." (Doc. 79, p. 21.) Plaintiff also argues that Johnson's and Petrie's statements are inaccurate because those statements may not actually pertain to him. Plaintiff notes that Johnson and Petrie cited his identification number incorrectly as "953005" in their declarations regarding his grievance filing history.[4] (Id. at p. 17.) As a result, Plaintiff contends that these individuals "may have filed Plaintiff's January 18, 2011 informal grievance under another GDC number" which would explain its absence from his grievance filing history. (Id.)

As stated above, under Turner Step One, the Court must accept as true Plaintiff's statements regarding exhaustion. In his filings, Plaintiff avers that he attempted to properly exhaust administrative grievances prior to filing suit, but his efforts were stymied by prison staff in an effort to conceal Plaintiff's beating and denial of medical care. Accepting Plaintiff's assertions as true, Plaintiff exhausted all the remedies available to him by filing an informal grievance within ten days of the date on which he was beaten and denied adequate medical care, requesting a formal grievance form when his informal grievance went unanswered, and filing an appeal.[5] Under this version of facts, Plaintiff was prevented from properly exhausting administrative remedies through no fault of his own, and, therefore, exhausted all administrative remedies available to him. Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, at 1860 (2016) (finding that an administrative remedy is not "available" when "prison administrators thwart inmates

---

[4] Plaintiff's correct identification number is "556484."

[5] As the Eleventh Circuit noted, without receiving a response to his informal grievance, under the SOP, he was unable to make a formal grievance because the SOP requires that a prisoner "must complete the informal grievance procedure before being issued a formal grievance" form. Thus, under Plaintiff's version of the facts, the prison's failure to respond to Plaintiff's informal grievance prevented him from completing the informal grievance procedure, which left him no recourse but to file an appeal.

11

from taking advantage of a grievance process through machination, misrepresentation, or intimidation").

However, Plaintiff's claims of unavailability wither when subjected to the crucible of examination the second <u>Turner</u> step requires. Under the second <u>Turner</u> step, the Court resolves any disputed factual issues and then assesses, under those findings, whether the prisoner has exhausted his available administrative remedies. <u>Turner</u>, 541 F.3d 1083. Here, the factual issues disputed by the parties concern whether Plaintiff actually filed the January 18, 2011 grievance, as well as the authenticity of the documentation Plaintiff has submitted to show that he attempted, but was prevented, from following the applicable grievance procedures. Having reviewed all of Plaintiff's and Defendants' filings, the Court will proceed to examine, under <u>Turner</u> Step Two, each party's evidence regarding whether Plaintiff exhausted the administrative remedies available to him following his alleged beating.

As to Plaintiff's informal grievance dated January 18, 2011, each party alleges that the other has committed fraud upon this Court. Specifically, Defendants have offered the sworn statements of Edwina Johnson and Donald Petrie. (Doc. 13-2.) Johnson and Petrie each declare, under penalty of perjury, that "the document[s] filed by Inmate Whatley [are] not authentic" and that they "neither wrote nor signed the document[s]." (Doc. 41-1, p. 4; Doc. 41-2, p. 4.) Plaintiff conclusively alleges that Johnson's and Petrie's declarations are an extension of Defendants' conspiracy to conceal his beating at Telfair State Prison and his subsequent insufficient medical care at Ware State Prison. Plaintiff contends that Defendants submitted those declarations in an effort to deceive the Court into finding that Plaintiff failed to properly exhaust his claims.

Nevertheless, Defendants have presented more evidence supporting their position that Plaintiff never filed a grievance on January 18, 2011. Though Plaintiff has submitted documents purportedly showing that he diligently attempted to exhaust administrative remedies, no record of those documents exists. In addition, Defendants present the testimony of two separate officials who each swear under oath that the documents presented by Plaintiff are not authentic and that the signatures on these unrecorded documents are not their own. The lack of any record of those documents and the testimony of two prison officials substantially outweighs Plaintiff's unsubstantiated claim that the documents are authentic and that prison officials conspired to block his efforts to exhaust administrative remedies.

Moreover, Plaintiff's grievance history belies any contention that prison officials hid his grievances, thwarted his attempts to file grievances, or otherwise made the grievance process unavailable to him. (Doc. 19-4.) Defendants' records reflect that Plaintiff filed approximately sixty-nine (69) grievances while confined at the Georgia Diagnostic and Classification Prison ("GDCP") from the date he transferred to GDCP, January 12, 2011, through the date of February 4, 2013. (Doc. 19, pp. 10–11.) The issues he raised in those grievances included complaints regarding his housing assignment, staff negligence, policy and procedural challenges, sexual harassment, complaints regarding his religious beliefs, food service, visitation privileges, library privileges, and recreation and leisure time privileges, among others. Id. Further, Plaintiff pursued several of his grievances to the third and final administrative review stage, without interruption. Id. Moreover, prison officials did not hide or destroy these grievances. Rather, they kept records reflecting the initial filing and various levels of appeals. Accordingly, the Court finds that the evidence weighs in favor of Defendants' contention that Plaintiff never filed the informal grievance dated January 11, 2016.

Therefore, having found Defendants' account as to the disputed facts more credible than Plaintiff's account, I recommend that the Court find in favor of Defendants under Turner Step Two because Plaintiff never filed a grievance on January 18, 2011. Because Plaintiff did not file a grievance on January 18, 2011, he did not exhaust his administrative remedies through such a grievance.

### 2. Grievance 80940

As discussed above, the second ground on which the Eleventh Circuit reversed this Court's dismissal of Plaintiff's Complaint pertained to whether the prison waived a procedural bar when it evaluated Grievance 80940. Importantly, "[t]he purpose of the PLRA's exhaustion requirement is to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case[,]'" (Doc. 69) (quoting Woodford, 548 U.S. at 93.) However, the Eleventh Circuit held, as a matter of first impression, that if corrections officials choose to disregard a grievance's procedural flaw and evaluate a prisoner's claims on the merits, the District Court may not then dismiss those claims for Plaintiff's failure to properly exhaust administrative remedies. See Doc. 69 ("[A] procedural flaw ignored by a prison cannot later be resurrected by the District Court to defeat exhaustion.") (citing Hill v. Curcione, 657 F.3d 116, 125 (2d Cir. 2011). Likewise, "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits," the Court may also consider Plaintiff's claims on the merits. Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005).[6] However, the Eleventh Circuit declined to address whether, in this

---

[6] Specifically, the Eleventh Circuit adopted the reasoning of the Sixth Circuit in Reed-Bey v. Pramstaller, 603 F.3d 322, 325 (6th Cir. 2010) that the rules governing a prison's grievance procedure "serve the State's interest: its interest in creating a prison grievance system, its interest in reviewing a complaint before another sovereign gets involved, and its interest in deciding when to waive or enforce its own rules. . . . [T]he State's decision to review a claim on the merits gives [the Court] warrant to do so as well, even when a procedural default might otherwise have resolved the claim." (Doc 69, p. 20.)

case, the prison declined to enforce its rule and waived Plaintiff's procedural flaw. (Doc. 69, p. 20.) Rather, the Court of Appeals remanded for this Court to resolve this factual issue. Id.

In Grievance 80940, Plaintiff alleged that prison officials did not follow proper procedure when processing his previously filed Grievance 80327. (Doc. 69, p. 15.) As the Eleventh Circuit noted, "[i]n filing grievance 80940, [Plaintiff] undisputedly went through each step of the grievance procedure. He filed an informal grievance on March 7, 2011, received a rejection on March 17, filed a formal grievance on March 22, received a rejection of his formal grievance on April 27, filed an appeal on April 28, and received a rejection of the appeal on June 14." (Id. at p. 16.) However, the parties dispute whether, in proceeding through each of these steps, Plaintiff exhausted administrative remedies as to only the procedural issues raised by Grievance 80940, or whether Plaintiff also simultaneously exhausted his administrative remedies as to the underlying substantive claims contained in Grievance 80327.

An examination of informal grievance form 80940 shows that Plaintiff made no mention of the merits of his claim in that form. He stated only that: "Ms. Victoria Malone is in violation of Grievance Procedure. On 2-15-11 I filed an 'Imminent Danger' grievance. No response has been rendered. The allotted response time has expired." (Doc. 19-8, p. 8.) However, in his formal grievance form, Plaintiff explicitly referred to the merits of his excessive force and deliberate indifference claims, stating that his earlier grievance, "Grievance #80327, 'Imminent Danger,' described the treatment that [he] ha[d] been under since 1-12-11 when [he] was unjustly and severely beat[en] at Telfair State Prison . . . and then transferred without medical attention." (Id. at p. 3.) In response to Plaintiff's formal grievance, the warden first rejected that grievance on procedural grounds, stating that "Grievance 80327 was rejected on 2-17-11 due to the fact that it was non-grievable, transfer to another institution." (Id.) However, the warden

15

also seemingly addressed the merits of Plaintiff's underlying substantive claims within his response, stating that "[p]er phone conversation with Nurse Gore, you were seen at medical upon arrival [at GDCP] on 2-9-11 and there was no evidence supporting your claim of being beaten." (Id.) Plaintiff then appealed the warden's rejection of his formal grievance. The Commissioner's Office rejected that appeal, stating:

> In your written statements you alleged that Ms. Victoria Malone violated GDC's grievance procedure by not responding to a grievance you filed on February 15, 2011. The grievance in question, informal grievance #80327, was rejected because the issue you presented (transfer to another facility) is non-grievable, as stipulated in Standard Operating Procedure IIB05-0001. You were advised that the issue could be addressed via GDC's classification appeals process. We found no evidence to indicate that Ms. Malone violated GDC's grievance procedure, as you alleged. This grievance is denied.

(Doc. 19-8, p. 2.) Defendants aver that neither the warden nor the Commissioner's Office addressed the merits of Plaintiff's claims in their rejections of Grievance 80940. Specifically, Defendants contend that 1) the warden's language referring to the merits of Plaintiff's underlying substantive claims was couched in language denying Grievance 80940 on procedural grounds; 2) the spirit of the warden's rejection was based upon procedural grounds; and 3) when the prison's responses to Plaintiff's informal grievance, formal grievance, and appeal are read in succession, it is clear that Grievance 80940 was rejected solely on procedural grounds. Plaintiff disagrees, contending that the warden addressed his claims on the merits and contends that the prison, therefore, waived the procedural bar to his substantive claims.

A plain reading of the warden's response to Grievance 80940 leads to the conclusion that he considered the merits of the excessive force and deliberate indifference claims alleged by Plaintiff in Grievance 80327 while addressing Grievance 80940. While the warden's statement concerning Grievance 80327 that "there was no evidence supporting [Plaintiff's] claim of being

16

severely beaten"—is couched in language which addresses the procedural flaws of Grievance 80940, that statement was not necessary to reject Grievance 80940 on procedural grounds. Moreover, the warden's statement goes to the heart of the merits of Plaintiff's excessive force claims and deliberate indifference claims because it implies that Plaintiff was never beaten and therefore was never denied medical care. Accordingly, I conclude that the warden addressed the merits of Plaintiff's excessive force and deliberate indifference claims and, therefore, waived the procedural bar at the second stage of administrative review.

Nevertheless, as Judge Vinson noted in his concurrence to the Eleventh Circuit's Opinion, (doc. 69, pp. 21–23), this finding should not end the Court's inquiry. Judge Vinson noted that "while the warden may have addressed the beating claim 'on the merits' at the second stage of administrative review, it is unclear whether the Commissioner's Office did so at the third and final stage." (Doc. 69, pp. 21–22.) Judge Vinson continued, that if this Court finds that the Warden made a decision on the merits, then the court

> must then consider the more legally significant question of whether the grievance was considered and resolved on the merits by the Commissioner's Office at the third and final step. If it was, the state waived its exhaustion defense, as every circuit has held. On the other hand, if the commissioner's final decision denying the grievance was based on a valid procedural reason, then [Plaintiff's] grievance must be treated as unexhausted, regardless of whether the warden's earlier decision was on the merits.

Id. at p. 23.

Judge Vinson is not alone in this view. As the United States District Court for the Middle District of Georgia has concluded, "most courts in circuits that have adopted a waiver rule . . . require a decision on the merits at every stage of review or at least at the last stage before finding a waiver of exhaustion.'" Hall v. Dunlap, No. 1:12–cv–183, 2014 WL 1315398, at *2–4 (M.D. Ga. Mar. 31, 2014) (citing Cook v. Caruso, 531 F. App'x 554, 563 (6th Cir. 2013); Casey v.

Smith, 71 F. App'x 916, 918 (3d Cir. 2003); Caldwell v. Nelson, No. 12–cv–02990–RBJ–BNB, 2013 WL 5586065, at *4 (D. Colo. Oct. 10, 2013); Gara v. Kelley, No. 10–CV–0769–MJR–SCW, 2012 WL 3683556, at *3–4 (S.D. Ill. Aug. 24, 2012)). Significantly, the Sixth Circuit, whose analysis the Eleventh Circuit found "particularly persuasive" has adopted this approach. Cook, 531 F. App'x at 563 ("For Reed–Bey's holding to apply, [the plaintiff] would have to receive 'merit-based responses *at each step*.'") (quoting Reed–Bey, 603 F.3d at 325 (emphasis added)).

Therefore, even assuming the warden addressed the merits of Plaintiff's claims at the second stage of review, if the Commissioner's Office denied Plaintiff's Grievance 80940 on procedural grounds at the third stage of review, then, ultimately, corrections officials did not waive the procedural bar applicable to Plaintiff's underlying excessive force and deliberate indifference claims. If this procedural bar was not waived, then Plaintiff failed to properly exhaust his administrative remedies, and his Complaint is due to be dismissed.

In its response to Plaintiff's appeal of Grievance 80940, the Commissioner's Office stated, in full, that:

> A member of my staff reviewed your grievance. In your written statements you alleged that Ms. Victoria Malone violated GDC's grievance procedure by not responding to a grievance you filed on February 15, 2011. The grievance in question, informal grievance #80327, was rejected because the issue you presented (transfer to another facility) is non-grievable, as stipulated in Standard Operating Procedure IIB05-0001. You were advised that the issue could be addressed via GDC's classification appeals process. We found no evidence to indicate that Ms. Malone violated GDC's grievance procedure, as you alleged. This grievance is denied.

Unlike the warden's response at the second administrative review stage, the Commissioner's Office made no reference to Plaintiff's beating or to the sufficiency of his medical care in its review of Grievance 80940. While the Commissioner's Office noted that no

18

"evidence" supported Plaintiff's claim that the prison's grievance procedure was violated, that statement relates to Plaintiff's allegations concerning procedural matters, as opposed to whether Plaintiff was beaten and denied medical care. Accordingly, because the Commissioner's Office did not address Plaintiff's substantive claims it did not waive the procedural bar at the third and final stage of administrative review. Therefore, the warden's waiver of the procedural bar at the second stage is immaterial. As a result, Plaintiff failed to exhaust his administrative remedies as to the claims he brings in this action through Grievance 80940.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss, (doc. 19), and **DISMISS** Plaintiff's excessive force claims against Defendant Smith and deliberate indifference claims against Defendants Hart and Griffin **without prejudice** due to his failure to exhaust administrative remedies. The Clerk of Court should be directed to enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 7th day of September, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA