**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

FILED
Scott L. Poff, Clerk
United States District Court

By casbell at 11:02 am, Mar 13, 2020

SHAWN WAYNE WHATLEY,

        Plaintiff,

   v.

DARRELL HART; RODNEY SMITH; and
MICHAEL GRIFFIN,

        Defendants.

CIVIL ACTION NO.: 5:12-cv-142

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Partial Motion for Summary Judgment and their Motion to Exclude Expert Causation Opinion of Richard Ellin, M.D., as well as Plaintiff's Motion for Hearing. Docs. 115, 118, 127. Plaintiff filed Responses to Defendants' Motions, docs. 125, 126, and Defendants filed Replies, docs. 130, 131. For the following reasons, I **GRANT** Defendants' Motion to Exclude and **DENY** Plaintiff's Motion for Hearing. I also **RECOMMEND** the Court **GRANT in part** as unopposed Defendants' Partial Motion for Summary Judgment and **DISMISS** Plaintiff's claims against Defendants Hart and Griffin. I further **RECOMMEND** the Court **DENY in part** Defendants' Partial Motion for Summary Judgment relating to Plaintiff's ability to seek compensatory and punitive damages on his excessive force claim against Defendant Smith.

# BACKGROUND[1]

This case was filed in 2012. In the intervening years, it has gone before the Eleventh Circuit Court of Appeals twice regarding Plaintiff's exhaustion of administrative remedies. Docs. 68, 95. Once those issues were resolved in Plaintiff's favor, the parties engaged in and completed discovery. Doc. 112. Defendants have filed the instant Motion for Summary Judgment and Motion to Exclude. Docs. 115, 118.

Plaintiff's pending claims include a claim of excessive force against Defendant Smith and deliberate indifference to serious medical needs claims against Defendants Hart and Griffin. Defendants seek summary judgment on Plaintiff's claims against Defendants Hart and Griffin on multiple grounds. Doc. 115 at 2. However, in response, Plaintiff states he no longer wishes to pursue those claims, and, therefore, I recommend the Court grant summary judgment in Defendants' favor on those claims, as the motion is unopposed. Doc. 125 at 3 n.1. Regarding Plaintiff's only remaining claim, the excessive force claim against Defendant Smith, Defendants seek partial summary judgment on the grounds that the injuries suffered by Plaintiff were *de minimis*, and, therefore, Plaintiff cannot recover compensatory or punitive damages. Thus, for the purposes of resolving Defendants' motion for partial summary judgment, the only relevant facts pertain to the extent of Plaintiff's injuries.

Plaintiff alleges Defendant Smith and two unidentified corrections officers pushed him into his cell wall and beat him with their fists, a baton, and a fire extinguisher on January 12, 2011. Doc. 115-1 at 2; Doc. 125 at 3. Defendant Smith denies ever using force and denies the

---

[1] The recited facts represent the facts in the record and draw all reasonable inferences in the light most favorable to Plaintiff, the non-moving party. See Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016).

incident occurred. Doc. 115-1 at 2 n.1. Instead, Defendants contend Plaintiff's injuries were self-inflicted or inflicted by another inmate. Id.

During the alleged assault, Plaintiff says his forehead hit the wall, then his back and face hit the wall, causing his mouth to bleed and blood to run down his face. Doc. 115-3 at 20–21. He also alleges his forearms, rib cage, back, and parts of his lower extremities were struck. Id. at 22. Plaintiff says he experienced shallow breathing and had difficulty standing up on the day of the assault. Id. at 36. After the alleged assault, Plaintiff was transferred from Telfair State Prison to Ware State Prison. Doc. 115-2 at 1. Defendants assert Plaintiff did not tell anyone about the assault during a medical examination upon his transfer to Ware State Prison, doc. 115-2 at 1, but Plaintiff alleges he was threatened not to tell anyone about the beating by Defendant Smith, doc. 125 at 4–5.

Plaintiff says the next day the pain "was becoming unbearable," and that it was becoming "difficult for [him] to even hardly move." Doc. 115-3 at 38–39. Plaintiff also states he urinated blood and vomited multiple times. Id. The night of January 13, 2011, Plaintiff says he passed out and was brought to the medical ward where he showed a nurse a knot on his head, the bruises along his ribcage and back, and a busted gum under his upper lip. Id. at 41.

Kenneth Blair, an inmate, provided a sworn statement regarding an interaction with Plaintiff on January 12, 2011, where Blair noticed Plaintiff's lip was bleeding. Doc. 125-6. A "Nursing Assessment for Musculoskeletal Complaints/Pain" taken on January 13, 2011 shows Plaintiff complained of "aching" back pain to a nurse, who noted "recent trauma" due to involvement in an "altercation." Doc. 115-9 at 15. The nurse also noted "tenderness" and "discoloration" of the affected area, but full range of motion, and prescribed Tylenol. Id. Plaintiff was directed to return to sick call if the problems continued. Id. On January 17, 2011,

a prison official took color photographs of Plaintiff's torso; the pictures appear to show large, dark-colored bruising along the left side of Plaintiff's torso, a prominent bruise behind Plaintiff's right shoulder, and less dark, but still visible bruising along Plaintiff's right side, stomach, and back.   Doc. 115-4 at 2.   Dr. Thomas Ferrell examined Plaintiff on January 19, 2011, for "right lateral rib cage pain," noting "multiple contusions (bruises) to his left lateral chest wall and lower anterior right chest wall."   Doc. 115-9 at 5.   Plaintiff also complained to Dr. Ferrell of painful urination and blood in his urine, to which the doctor recommended he increase his fluid intake. Id. at 6.   Dr. Ferrell acknowledged Plaintiff's statement during the examination that the "Cert team beat him" before his transfer to Ware State Prison on January 12, 2011.   Id. at 5.   An x-ray examination revealed no broken bones, and a urinalysis revealed no blood in Plaintiff's urine. Id. at 5–6.   Dr. Ferrell opined that Plaintiff's "bruising appeared superficial, his skin was intact, with no abrasions or lacerations noted.   No swelling (edema) was noted.   There was no evidence of bone, muscle, organ, or deep tissue injuries."   Id. at 6.   Plaintiff was advised to follow up with Dr. Ferrell but did not do so.   Id.   Blood work collected on January 13, 2011 and January 20, 2011 revealed normal kidney function.   Id. at 7.   Plaintiff's expert, Dr. Richard Ellin, M.D., opined the photographs show "extensive contusions" on Plaintiff's arms, "chest, back and torso, including over the kidneys."   Doc. 118-1 at 3.   Moreover, Dr. Ellin averred "trauma to the kidneys, which is suggested by the contusions over Mr. Whatley's kidney areas, likely caused him to experience blood in the urine."   Id. at 4.   Dr. Ellin explained that, in some circumstances, a urinalysis can show no blood in the urine even when an individual is actually urinating blood, particularly where the condition is intermittent.   Doc. 118-2 at 14.

**DISCUSSION**

**I.    Defendants' Partial Motion for Summary Judgment**

Defendants move for partial summary judgment on Plaintiff's deliberate indifference to serious medical needs claims and his compensatory and punitive damages requests for his excessive force and deliberate indifference claims.   Doc. 115-1 at 2.   For the reasons set forth below, I **RECOMMEND** the Court **GRANT as unopposed** Defendants' Partial Motion for Summary Judgment regarding Plaintiff's deliberate indifference to serious medical needs claims against Defendants Hart and Griffin, and I **RECOMMEND** the Court **DENY** Defendants' Partial Motion for Summary Judgment regarding Plaintiff's request for compensatory and punitive damages on his remaining claim.

**A.    Standard of Review**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A fact is "material" if it "might affect the outcome of the suit under the governing law."   FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).   A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact.   See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).   Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."   Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).   When the nonmoving party would have the burden of proof at trial, the moving party may discharge his

burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).  However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. (emphasis and citations omitted).

**B.      Plaintiff's Deliberate Indifference Claims**

In his Complaint, Plaintiff contends Defendant Smith and two unknown guards assaulted him as he was awaiting transport to Ware State Prison from Telfair State Prison.  Doc. 1 at 3–4. As a result of the alleged assault, Plaintiff states he sustained serious injuries and Defendants Hart and Griffin were deliberately indifferent to his serious medical needs by denying or delaying treatment for approximately five days' time.  Id. at 4.

In their Partial Motion for Summary Judgment, Defendants Hart and Griffin, neither of whom are medical care providers, state Plaintiff initially did not tell them about what he claims occurred at Telfair State Prison.  Doc. 115-1 at 3.  Defendants Hart and Griffin generally deny

having failed to provide or having delayed Plaintiff's receipt of necessary medical care and treatment. Id. at 5–7. Defendants Hart and Griffin contend Plaintiff does not set forth a viable deliberate indifference claim against them, because Plaintiff presents no evidence of an objectively serious medical need or that either of these Defendants delayed or denied Plaintiff access to medical treatment, and Plaintiff failed to place verifying medical evidence in the record regarding the effect of any alleged delay in treatment. Id. at 13–17.

Plaintiff, in his Response to Defendant Hart and Griffin's Partial Motion relating to his deliberate indifference claims, states he does not oppose the granting of summary judgment in favor of these Defendants and "is no longer pursuing those claims." Doc. 125 at 3 n.1. Thus, I **RECOMMEND** the Court **GRANT as unopposed** the portion of Defendants' Motion regarding Plaintiff's deliberate indifference claims and **DISMISS** Plaintiff's claims against Defendants Hart and Griffin.

### C. Plaintiff's Requests for Compensatory and Punitive Damages for his Excessive Force Claim Against Defendant Smith

Defendants also argue 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act ("PLRA") precludes Plaintiff from recovering compensatory and punitive damages because Plaintiff did not suffer more than *de minimis* harm. Doc. 115-1 at 18. Plaintiff argues § 1997e(e) does not apply to his claim because the statute only applies in cases where the prisoner seeks damages for mental or emotional injury, and he asserts a physical injury. Doc. 125 at 11. Alternatively, Plaintiff argues that, if § 1997e(e) does apply, a reasonable jury could find Plaintiff suffered greater than *de minimis* harm. Id. at 13.

#### 1. Whether § 1997e(e) Applies to Plaintiff's Excessive Force Claim

Section 1997e(e) states: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in

custody without a prior showing of physical injury." Under this statute and Eleventh Circuit case law, "an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury." Brooks v. Warden, 800 F.3d 1295, 1307 (11th Cir. 2015). Two seminal Eleventh Circuit decisions established this rule. The first case is Harris v. Garner, 190 F.3d 1279 (11th Cir. 1999) ("Harris I"), *reh'g en banc granted and opinion vacated*, 197 F.3d 1059 (11th Cir. 1999), *opinion reinstated in relevant part by* Harris II, 216 F.3d 970 (11th Cir. 2000). In Harris I, the plaintiffs alleged Fourth, Eighth, and Fourteenth Amendment violations for a prison "shakedown" by Georgia Department of Corrections' employees and sought compensatory and punitive damages. 190 F.3d at 1282–83. The Harris I court affirmed the dismissal of one plaintiff's claims for compensatory and punitive damages because he failed to meet § 1997e(e)'s physical injury requirement. Id. at 1287–90. However, the court did not address whether this Harris plaintiff's asserted injuries were mental or emotional. Id. Likewise, the Eleventh Circuit affirmed the dismissal of a claim for punitive damages in Al-Amin v. Smith, 637 F.3d 1192 (11th Cir. 2011), under § 1997e(e). In Al-Amin, the plaintiff sued under the First Amendment seeking, among other forms of relief, punitive damages because prison officials had opened his legal correspondence outside of his presence. 637 F.3d at 1194. As in Harris I, the Eleventh Circuit Court of Appeals held the PLRA precluded the plaintiff from recovering punitive damages in the absence of physical injury. Id. at 1199. Regarding the application of § 1997e(e) to cases involving no mental or emotional injury, the Al-Amin court discussed the Harris opinion in further depth, noting the Harris court did not "explicitly or impliedly limit its punitive damage holding to cases in which a prisoner pleads a 'mental or emotional' injury." 637 F.3d at 1196–97. Instead, "the Harris Court focused only on the statute's physical injury

requirement[] and did not distinguish between cases in which a prisoner pleads a 'mental or emotional injury' and those where a prisoner does not so plead." Id. In a footnote, the Al-Amin court further explained that to hold otherwise—meaning to except from the requirements of § 1997e(e) plaintiffs who do not allege mental or emotional injury—would yield "illogical results." Id. at 1197 n.5. Specifically, the Eleventh Circuit noted:

> Prisoner plaintiffs could avoid the statutory bar of § 1997e(e) by artful pleading: a plaintiff who alleged an emotional injury from a First Amendment violation and sought only punitive damages would be precluded from any recovery, whereas another plaintiff suffering the same First Amendment violation could recover punitive damages so long as he pleaded no injury whatsoever. The words "mental" and "emotional" would thus achieve talismanic significance in prisoner pleadings.

Id. Indeed, as the Harris II court acknowledged, "[s]ection 1997e(e) unequivocally states that '*No* Federal Civil Action may be brought . . . and 'no' means no. The clear and broad statutory language does not permit us to except any type of claims, including constitutional claims." Id. In sum, the effect of § 1997e(e) "applies 'equally to all constitutional claims,' including those 'rarely accompanied by physical injury.'"[2] Carter v. Allen, 762 F. App'x 827, 836 (11th Cir. 2019) (citing Al-Amin, 637 F.3d at 1197).

Plaintiff, who is incarcerated at Hays State Prison, claims violations of his Eighth Amendment rights under § 1983. Doc. 5 at 1. Accordingly, based on Eleventh Circuit precedent, the first issue is resolved in the affirmative—§ 1997e(e) applies to Plaintiff's cause of

---

[2]     As Defendants point out in their brief, doc. 130 at 3, the PLRA's limitation on recovery, as interpreted by the Eleventh Circuit, has been subject to challenge, but this remains the settled law of our Circuit. Carter v. Allen, 940 F.3d 1233, 1234 (11th Cir. 2019) (denying petition for rehearing *en banc* to reconsider interpretation of § 1997e(e)). Judge Martin, in a dissent to the decision not to rehear Carter *en banc*, explained the Eleventh Circuit has interpreted § 1997e(e) "to preclude compensatory and punitive damages for any claim absent physical injury." Id. at 1237–38 (emphasis in original).

action, and he, therefore, must satisfy its requirements in order to recover compensatory and

punitive damages.[3]

### 2. Whether Plaintiff's Injuries Are De Minimis as a Matter of Law

Because § 1997e(e) applies to Plaintiff's claim, Plaintiff must show he suffered a

sufficient physical injury to recover compensatory and punitive damages.   Not just any

allegation of physical injury is sufficient, for "such an interpretation would undermine the

statute's essential purpose—'to curtail frivolous and abusive prisoner litigation.'"   Harris, 190

F.3d at 1286.   Rather, "the physical injury must be more than *de minimis*[] but need not be

significant."   Id.

The Court must first define the severity of Plaintiff's injuries.   For the purposes of

summary judgment, the Court must construe the facts in the light most favorable to the non-

moving party.   Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016).   Through this

lens, the Court determines Plaintiff suffered severe bruising across his torso, which caused

unbearable pain and made it difficult to move.   In the hours following the alleged attack, he had

trouble breathing and standing up, he vomited, he had blood in his urine, a knot appeared on his

head, and he had a busted gum.   Plaintiff's blood pressure spiked.   It became painful for

Plaintiff to urinate.   His bruises lasted two to three weeks.   At one point, Plaintiff passed out

and had to be taken to the medical unit.   Defendants ask the Court to disregard many of

Plaintiff's injuries, other than the bruising to his torso, as unsubstantiated, relying on Bennett v.

---

[3]       The Court recognizes another court within our Circuit has held differently.   See Owens v. Hart,
Case No. 1:14-cv-1, 2016 WL 450297, at *2 (M.D. Ga. Feb. 4, 2016) (finding plaintiff's compensatory
and punitive damages claims for physical injury not barred by § 1997e(e), even if his physical injury was
*de minimis*, because § 1997e(e) "only bars recovery for mental or emotional injury") (citing Nix v. Carter,
Case No. 5:10-cv-256, 2013 WL 432566, at *2 (M.D. Ga. Feb. 1, 2013)).   However, Owens is not
controlling here and appears at odds with the Eleventh Circuit's recent interpretation of § 1997e(e).

Parker, 898 F.2d 1530 (11th Cir. 1990).  Doc. 115-1 at 19.  However, the approach in Bennett does not apply here.  In Bennett, the court rejected the plaintiff's "conclusory allegation" of physical injury, which was "unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses."  Bennett, 898 F.2d at 1533–34.  In this case, contemporaneous medical records confirm Plaintiff reported his injuries to examining medical professionals very close in time to when he obtained the injuries.  Furthermore, the treatment notes could be viewed as confirming Plaintiff's reported injuries (at least tacitly), rather than find them unsubstantiated on examination.  While some test results came back negative, the care providers ordered conservative treatments and encouraged Plaintiff to return for follow ups—an unlikely course for a patient assumed to be malingering.[4]  Additionally, another inmate claims to have seen Plaintiff's injuries the day he was allegedly assaulted.  Therefore, viewing the facts in the light most favorable to Plaintiff, the Court will consider whether Plaintiff's alleged injuries are supported by some evidence and are not merely conclusory allegations.  The injuries include extensive bruising to Plaintiff's torso (which persisted for two to three weeks), painful and impeded movement, a bleeding mouth, an injured upper lip and gum, blacking out, dizziness, a spike in blood pressure, vomiting, difficulty breathing, a knot on his forehead, painful urination, and blood in his urine.  The Court must determine whether these injuries, taken together, are not "greater than *de minimis*" as a matter of law.

"The meaning of the phrase 'greater than de minimis,' however, is far from clear." Chatham v. Adcock, 334 F. App'x 281, 284 (11th Cir. 2009).  Under Eleventh Circuit law, there is no bright line test for whether an injury is *de minimis*; it is, in most cases, a fact-intensive

---

[4]    Notably, Plaintiff's expert has provided explanations reconciling some of Plaintiff's reported symptoms and the negative test results.

inquiry.[5]   Case law indicates that minor cuts and bruises are typically *de minimis* physical

injuries.  See, e.g., Dixon v. Toole, 225 F. App'x 797, 799 (11th Cir. 2007) ("[M]ere bruising

from the application of restraints is only a *de minimis* injury."); Nolin v. Isbell, 207 F.3d 1253,

1258 n.4 (11th Cir. 2000) (bruises received during an arrest were non-actionable *de minimis*

injury); Harris, 190 F.3d at 1286 (holding that a forced "dry shave" was a *de minimis* injury).

However, injuries causing bleeding, swelling, broken teeth, and extensive cuts and bruising can

constitute more than *de minimis* injuries.  See, e.g., Hudson, 503 U.S. at 10 (finding bruises,

swelling, loosened teeth, and a cracked dental plate more than *de minimis* injury to support

Eighth Amendment violation); Johnson v. Breeden, 280 F.3d 1308, 1312 (11th Cir. 2002)

(finding head injury that caused swelling and seizure, along with cuts and bruises to the face,

shoulders, and upper back was more than *de minimis* injury).   Bleeding and bruising are not

necessarily required; allegations of continuing severe physical pain may also be greater than *de

minimis* injuries.  See Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x 555, 556 (11th Cir.

2014) (finding plaintiff, whose diet caused him to suffer headaches, weakness, cold sweats,

---

[5]      The Eleventh Circuit Pattern Jury Instructions for damages on § 1983 claims state:

> [**For cases subject to the PLRA**: [Name of plaintiff] can recover compensatory [and
> punitive] damages only if you find that [name of plaintiff] has suffered more than a
> minimal physical injury.   Thus, you must first determine whether [name of plaintiff]
> suffered more than a minimal physical injury.   Minor cuts and bruises are examples of
> minimal physical injuries.   If [name of plaintiff] has failed to prove that [he/she] suffered
> more than a minimal physical injury, then you must award nominal damages of $1.00.
> This is because a person whose constitutional rights were violated is entitled to a
> recognition of that violation, even if [he/she] suffered no actual injury. If you find that
> [name of plaintiff] has proved more than a minimal physical injury, then you must
> consider [name of plaintiff]'s claims for compensatory [and punitive] damages.]

Pattern Civ. Jury Instr. 11th Cir., Civil Rights—42 U.S.C. § 1983 Claims—Damages, § 5.13 (2019).

dizziness, weight loss, numbness in his left arm, and high blood sugar that caused fainting, alleged a greater than *de minimis* injury).[6]

Based on this case law, the Court cannot conclusively say—as a matter of law—that Plaintiff's injuries (i.e., extensive bruising lasting weeks, "unbearable" pain, difficult and impeded movement, vomiting, dizziness, blacking out, increased blood pressure, a forehead knot, blood in his urine, painful urination, and multiple mouth injuries) are not greater than *de minimis*.   That determination is due to be made by a trier of fact.   Because the evidence before the Court, construed in a light most favorable to Plaintiff, could be found by a reasonable jury to constitute a greater than *de minimis* injury, the Court finds Defendant Smith is not entitled to summary judgment barring Plaintiff from compensatory and punitive damages under § 1997e(e).

## II.    Defendants' Motion to Exclude Expert Causation Opinion of Richard Ellin, M.D.

As explained above, Plaintiff alleges Defendant Smith (along with two unknown officers) attacked him and that he suffered serious injuries from that attack.   Doc. 125-2 at 2.   Defendant Smith contends the attack never occurred and any injuries Plaintiff did suffer (from whatever the cause) were minimal.   Doc. 115-1 at 2.   Thus, both the cause and severity of Plaintiff's injuries are disputed in this case.

Plaintiff designated Richard Ellin, M.D., a Board-certified internist, as an expert in this case.   Doc. 118-1 at 7.   Dr. Ellin has over 33 years of clinical experience in internal medicine

---

[6]    Defendants point to various district court decisions evaluating whether a particular injury is greater than *de minimis* for the purposes of § 1997e(e).   Doc. 115-1 at 19; Doc. 130 at 7.   However, review of these cases merely confirms that § 1997e(e) requires a fact-intensive inquiry based on the unique circumstances of each case.   The cases Defendants cite are factually distinct, and, therefore, provide little guidance or persuasive weight.   Moreover, one of the cases Defendants cite concluded that, in a "close" case, the jury should resolve the issue.   See, e.g., Nix v. Rockwell, Order, 5:10-cv-256 (M.D. Ga. Mar. 25, 2015), ECF No. 97.

and sees patients on a regular basis.  Id. at 2.   Dr. Ellin has extensive experience with the

injuries and symptoms reported by Plaintiff.   Id.   Plaintiff expects Dr. Ellin to testify at trial

regarding Plaintiff's injuries.   Dr. Ellin did not examine Plaintiff; rather, Dr. Ellin reviewed the

pleadings in this case, portions of Plaintiff's deposition transcript, color photographs of

Plaintiff's bruises (taken on January 17, 2011), and portions of Plaintiff's medical records.   Id.

at 3.

Among other opinions, Dr. Ellin opines that Plaintiff's injuries were caused by an attack

on Plaintiff and were not self-inflicted.   Doc. 118-1.   Dr. Ellin provided a Rule 26 expert report,

id., and sat for a deposition, doc. 118-2.   In paragraphs 9 and 10 of his report, Dr. Ellin states:

> 9.   The color photographs taken on January 17, 2011 of Mr. Whatley show
> extensive contusions of the chest, back and torso, including over the kidneys.   It
> is my medical opinion that these contusions are, within a reasonable degree of
> medical certainty, a result of trauma; the medical records suggest no cause for the
> contusions other than trauma.   **It is highly unlikely that contusions such as
> these could have been self-inflicted, based on the extent of the contusions
> over a relatively large portion of the chest and torso.**   Such a trauma would
> likely cause one to experience significant pain and to have symptoms such as
> shortness of breath, even in the absence of rib fractures.   In addition, trauma to
> the kidneys, which is suggested by the contusions over Mr. Whatley's kidney
> areas, likely caused him to experience blood in the urine.   It is not likely that he
> would have experienced blood in the urine as a result of an elevated blood
> pressure at the levels that are recorded in his record.
>
> 10.   In summary, it is my medical opinion, within a reasonable degree of medical
> certainty, that **an attack on Mr. Whatley—and not self-inflicted harm—
> caused the extensive contusions, the pain in his chest, torso and other areas,
> episodes of shortness of breath, and blood in his urine, described in the
> medical records and discussed above.**

Doc. 118-1, ¶¶ 9, 10 (emphases added).   The pertinent portions of Dr. Ellin's opinion are

bolded.

During his deposition, Dr. Ellin confirmed the opinions set forth in his report but clarified

he had no opinion on who inflicted Plaintiff's injuries or what, if any, objects might have been

used to inflict the injuries.   Doc. 118-1 at 12, 34–35.   Dr. Ellin testified he has never been

called on to offer an opinion about what caused bruising to a body.   Id. at 12.   Dr. Ellin

confirmed that in forming his opinion, he performed no independent testing and reviewed no

literature.   Id. at 13.   Dr. Ellin also confirmed his methodology consisted of "being aware of

[Plaintiff's] description of the events, looking at the medical records and looking at the

photographs."   Id.   When asked about the factual basis for his opinion, Dr. Ellin testified:

> Well, it's an opinion.   It's difficult and almost impossible for me to envision a
> way for at least some of these bruises to have been self-inflicted.   For example,
> there are areas of bruising here that he can't reach with his hands, like on the back
> of his right shoulder.   There are locations of bruises here that if he were trying to
> self-inflict them and running into a wall, for example, or trying to hit himself, it
> would be very difficult for him to inflict a bruise on that location.

Id. at 11–12.

Defendants move to exclude Dr. Ellin's from offering his opinion that Plaintiff's injuries

were the result of an attack and were not self-inflicted at trial.[7]  Doc. 118.   Invoking Federal

Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993),

Defendants argue Dr. Ellin's opinion on this topic is unreliable and unhelpful.   Id. at 10–12.

Defendants additionally contend that, because Dr. Ellin's opinion is based solely on his

experience, he must explain how his experience is reliably applied to the facts, and he has not

done so.   Id.; Doc. 131 at 2.   At base, Defendants argue the opinion should be excluded under

Rule 702 and Daubert because the opinion is nothing more than *ipse dixit* and is more

appropriately a matter to be argued by lawyers at trial.   Defendants additionally argue that, even

if Dr. Ellin's opinion on this topic is admissible under Rule 702 and Daubert, the opinion should

---

[7]     Defendants seek to exclude Dr. Ellin's opinions "not only for purposes of trial, but also for
purposes of summary judgment."  Doc. 118 at 4.   However, Dr. Ellin's disputed opinion has no bearing
on the remaining portions of Defendants' Motion for Summary Judgment, as the Court has addressed.
Defendants request to exclude Dr. Ellin's disputed opinion for the purposes of summary judgment is,
therefore, immaterial and not addressed further.

be excluded under Federal Rule of Evidence 403 because any probative value of the opinion is substantially outweighed by the prejudice of having the opinion presented to the jury by an expert.[8]  Doc. 118 at 13 (arguing that the evidence is cumulative and unnecessarily time consuming).

Plaintiff opposes Defendants' Motion.  Doc. 126.  Plaintiff contends Dr. Ellin has extensive experience with the medical conditions involved in this case (i.e., bruising, chest pain, back pain, shortness of breath, and blood in urine) and that he has "seen patients who had bruising or injuries similar to the ones that [Plaintiff] presented."  Id. at 3, 4.  As to reliability, Plaintiff argues Dr. Ellin's opinion is based on his review of "all relevant evidence" (i.e., photos of Plaintiff's injuries, medical records, and Plaintiff's description of the incident) and extensive experience in the medical field, and is, therefore, reliable.[9]  Id. at 6–9.  Plaintiff argues Dr. Ellin's opinion would be helpful to the jury because the opinion offers something beyond the understanding and experience of the average citizen, namely that the "average citizen does not fully appreciate how the extent and placement of bruising can indicate whether the bruising was self-inflicted or caused by a third party."  Id. at 9–11.  Finally, Plaintiff argues Dr. Ellin's

---

[8]      Defendants do not, at this time, seek to exclude any of Dr. Ellin's other opinions, nor do Defendants challenge Dr. Ellin's qualifications.  Doc. 118.  Accordingly, in this Order, reference to Dr. Ellin's "opinion" or his "disputed opinion" means only Dr. Ellin's opinion that Plaintiff's injuries were the result of an attack and were not self-inflicted.  This Order does not address the admissibility of any other opinion expressed by Dr. Ellin.

[9]      Although Plaintiff contends Dr. Ellin formed his opinion about whether Plaintiff's injuries were self-inflicted after considering portions of Plaintiff's deposition, Dr. Ellin made it clear in his deposition that Plaintiff's testimony and description of the incident were immaterial to his opinion that the injuries were not self-inflicted.  Doc. 118-1 at 12 (Dr. Ellin agreeing that, if he were not considering Plaintiff's testimony and only considering the photographs of Plaintiff's injuries, his opinion on whether the injuries were self-inflicted would be the same).

opinion should not be excluded under Rule 403 because Dr. Ellin's opinion is "independent, objective testimony that medically corroborates Plaintiff's testimony." Id. at 11–12.

### A.    Standard of Review

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the United States Supreme Court discussed Federal Rule of Evidence 702, which governs expert testimony. The Supreme Court made clear that Rule 702 "compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific evidence." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (emphasis in original) (citing Daubert, 509 U.S. at 589 n.7, 597). The Supreme Court later held that "Daubert's general holding— setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (citing Fed. R. Evid. 702). The objective of a court's Daubert gatekeeping function is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id. at 152. Having adopted these decisions, amended Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In this Circuit, a court determining the admissibility of expert testimony under Rule 702 must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>Frazier</u>, 387 F.3d at 1260 (citations omitted).

For the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." <u>Id.</u> at 1260–61; <u>see also</u> Fed. R. Evid. 702 (establishing that a witness may be qualified as an expert by "knowledge, skill, experience, training, or education."). Ultimately, the expert must have "specialized knowledge" regarding his proposed area of testimony. Fed. R. Evid. 702(a). When assessing qualification, courts generally look to a proposed expert's education and experience and ask whether the witness's intended testimony is sufficiently within his or her area of expertise. <u>See</u> <u>Maiz v. Virani</u>, 253 F.3d 641, 665 (11th Cir. 2001). However, "the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express." <u>Frazier</u>, 387 F.3d at 1261 (emphasis in original).

The second prong, reliability, therefore, "remains a discrete, independent, and important requirement for admissibility." <u>Id.</u> As to reliability, the proponent of the expert testimony must demonstrate that the testimony is "based on sufficient facts or data" and is "the product of reliable principles and methods," and that the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Moreover, the facts or data underlying

the expert's opinion must be of a type that "experts in the particular field would reasonably rely on . . . in forming an opinion on the subject."  Fed. R. Evid. 703.

The Supreme Court in <u>Daubert</u> "set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702."  <u>United States v. Brown</u>, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted).  These observations guide courts in evaluating an expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field."  <u>Id.</u> (citation omitted).  "Sometimes the specific <u>Daubert</u> factors will aid in determining reliability; sometimes other questions may be more useful.  As a result, 'the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'"  <u>Frazier</u>, 387 F.3d at 1262 (quoting <u>Kumho Tire</u>, 526 U.S. at 152).  The Committee Note to the 2000 Amendments of Rule 702 explains that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain <u>how</u> that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  <u>Id.</u> at 1261 (emphasis in original) (citation omitted).

Third, and finally, expert opinion testimony must assist the trier of fact.  Fed. R. Evid. 702(a).  "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person."  <u>Frazier</u>, 387 F.3d at 1262 (citation omitted).  Proffered expert testimony generally will not help the trier of fact and is inadmissible "when it offers nothing more than what lawyers for the parties can argue in closing arguments."  <u>Cook v. Sheriff of Monroe Cty.</u>, 402 F.3d 1092, 1111 (11th Cir. 2005) (citation omitted).  Stated

differently, expert testimony that offers something "beyond the understanding and experience of the average citizen" helps the trier of fact and can be admitted. Id. (quoting United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985)).

As the proponent of Dr. Ellin's testimony, Plaintiff must satisfy all prerequisites of expert admissibility, by a preponderance of the evidence, as to each proposed opinion. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999) (citation omitted). "Where the burden has not been satisfied, [Rule] 702 precludes expert testimony." Siharath v. Sandoz Pharm. Corp., 131 F. Supp. 2d 1347, 1351 (N.D. Ga. 2001) (citations omitted). Defendant argues Plaintiff has failed to meet his burden under Rule 702.

**B.    Analysis**

*1.    Reliability*

As to reliability, Defendants primarily dispute whether Dr. Ellin's opinion is "the product of reliable principles and methods" and whether Dr. Ellin "has reliably applied the principles and methods to the facts of the case"—essential elements for admissibility under Rule 702. Doc. 118 at 10. After careful consideration, the Court finds Plaintiff has not met his burden to show Dr. Ellin's opinion is sufficiently reliable.

Dr. Ellin's opinion that Plaintiff's injuries were not self-inflicted is not derived from any specialized knowledge but from Dr. Ellin's belief that Plaintiff could not reach the areas on his body where the bruises were located. Dr. Ellin's deposition testimony confirms this. When pressed on the foundation for his opinion, Dr. Ellin explained that it was "difficult and almost impossible" for him to imagine how Plaintiff could inflict the bruises on himself, because "there are areas of bruising here that he can't reach with his hands." Doc. 118-1 at 11–12. When questioned about his methodology for arriving at this opinion, Dr. Ellin explained that his entire

methodology consisted of "being aware of [Plaintiff's] description of the events, looking at the medical records and looking at the photographs."[10]  Id.   In response to Defendants' Motion challenging the reliability of Dr. Ellin's opinion, Plaintiff suggests Dr. Ellin formed his opinion based on "methods or procedures of science," because he applied "more than three decades of medical experience" to the relevant evidence in this case.   Doc. 126 at 7.   But Plaintiff's conclusory characterization of Dr. Ellin's methods is not supported by Dr. Ellin's testimony and is undermined the inquiries the Court must engage in under Daubert and Rule 702.

It is clear that the overwhelming—if not sole—basis for Dr. Ellin's opinion is his experience in the medical field.   Accordingly, in order for the opinion to be admissible, Plaintiff must "explain how [Dr. Ellin's] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" Frazier, 387 F.3d at 1261 (emphasis in original) (citation omitted).   In other words, in seeking to admit Dr. Ellin's opinion, Plaintiff must be able to demonstrate a sufficient connection between Dr. Ellin's experience and the opinion.   Plaintiff cannot do so here.

The challenge Defendants raise concerns only Dr. Ellin's opinion about whether the injuries were self-inflicted (i.e., the cause of the injuries), not the severity or consequences of the injuries.   Doc. 118.   Because the disputed opinion concerns whether the injuries were self-inflicted, general experience in the medical field is not relevant (even assuming experience with injuries of a similar type); rather, the relevant experience would be Dr. Ellin's experience distinguishing between self-inflicted and non-self-inflicted injuries.   For example, experience in

---

[10]      As noted above, at other points in his deposition, Dr. Ellin explained that Plaintiff's description of the events had little or no bearing on Dr. Ellin's opinion about whether the injuries were self-inflicted. Thus, Dr. Ellin merely relied on the medical records and photographs of Plaintiff's injuries.   Doc. 118-1 at 12.

an investigation concerning the source of an injury—as opposed to the severity or consequences of the injury—would be relevant.   Plaintiff has not shown that Dr. Ellin had any such experience.   See Doc. 118-1 at 12 (Dr. Ellin testifying he had never been called on to offer an opinion about what caused bruising on a body).   Conversely, there is no apparent connection between Dr. Ellin's years of medical experience and his opinion that Plaintiff could not reach the areas where the injuries were located.   Dr. Ellin did not explain how his years of medical experience provided a basis for his opinions, and Plaintiff has offered no explanation in his briefs.   Indeed, it appears Dr. Ellin's opinion is based on his very ordinary observation about the location of the injuries and whether Plaintiff could reach that location.   Thus, Plaintiff has not met his burden to show Dr. Ellin reliably applied his experience to the facts of this case.[11]

Additionally, the "general observations" related to the reliability of an expert's theory or technique set forth in Daubert further confirm that Dr. Ellin's opinion is not reliable.   In considering such challenges, the reviewing court is to consider: "(1) whether [the theory or technique] can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field."   United States v. Brown, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted).   All of these inquiries demonstrate Dr. Ellin's methodology—the extent there is one—is unreliable.   Dr. Ellin did not test his theory,

---

[11]      To be clear, the Court is not categorically rejecting the idea that an expert can offer an opinion about whether injuries are self-inflicted based on the expert's relevant experience.   Forensic investigators and medical examiners may be called to testify about whether an injury is self-inflicted, particularly in cases where a cause of death is disputed (e.g., where suicide is suspected but not apparent) or where the victim has a history of self-harm and may do so based on their relevant experience.   See, e.g., United States v. Romano, 487 F. App'x 607, 610 (2d Cir. 2012) (no error in admitting expert doctor's testimony that wounds were self-inflicted because the expert's "years of experience in forensic pathology, examining victims of knife wounds, allowed him to testify as to the nature and cause of a knife wound").   The Court's conclusion in this case is based solely on the circumstances of this case and this expert.

there is no indication it has been peer reviewed, there is no known error rate, and there is no indication that the theory is generally accepted in the field. And while these observations may not line up directly with Dr. Ellin's opinion, that is because Dr. Ellin's opinion is based on his commonplace observations, not on any specialized methodology, theory, or technique.

In opposing Defendants' Motion, Plaintiff points to various district court decisions denying motions to exclude where the proffered expert's opinion was largely based on his or her experience, but each of those cases is distinguishable. Plaintiff cites Westervelt v. Parks Hotels & Resorts, Inc., No. 1:16-CV-03156, 2019 WL 2082708 (N.D. Ga. Mar. 01, 2019), for the proposition that courts have recognized that an expert's opinions are reliable where the opinion is based on the expert's experience and a review of the evidence. Doc. 126 at 2, 7, 9. In Westervelt, the plaintiff sought to rely on the testimony of an expert on glass windows and building envelopes in a case alleging the defendant negligently maintained a glass window, resulting in physical injuries to the plaintiff. Among other challenges, the defendant challenged the reliability of the expert's opinions on the condition of the window and the preventability of the injury. Unlike the opinion in this case, the expert's opinion in Westervelt was the result of the application of his specialized knowledge in the glass industry to the facts of that case. The expert inspected the remnants of the window and gave an opinion on the presence or absence of glazing material at the time of the accident. Similarly, the expert opined the accident was preventable because, in his years of experience in the field, a window consisting of a different material (laminated glass) would have withstood the impact present during the accident. Thus, the expert in Westervelt did what Dr. Ellin has not—reliably applied his experience to the facts of the case. The expert in Westervelt applied his years of experience in the glass industry (including laboratory testing, field testing, and forensic investigations) to evaluate the condition

of the window at the time of the incident based on a physical inspection and to opine on the preventability of the accident in light of the availability of other building materials. In contrast, Dr. Ellin's opinion is based on an ordinary observation about Plaintiff's inability to reach the location of his injuries, which is not connected to Dr. Ellin's years of medical experience.[12]

Plaintiff also relies on Powell v. Variety Wholesalers, Inc., No. CV617-058, 2019 WL 403966 (S.D. Ga. Jan. 31, 2019). In Powell, the expert, an orthopedic surgeon, relied on his experience and review of the relevant evidence to opine on whether the plaintiff's scans showed evidence of an acute injury. After finding that the expert was qualified, the court found the expert's opinion was sufficiently reliable. Again, the expert opinion in Powell was different from Dr. Ellin's opinion. The expert in Powell relied on his years of experience in reviewing scans and diagnosing patients to review the plaintiff's scans and opine on the presence of an acute injury; the expert, therefore, reliably applied his experience to the plaintiff's scans.[13] Dr. Ellin, on the other hand, made an ordinary observation and applied it to the facts of this case, which does not satisfy the reliability requirement.

The Supreme Court has made it clear the Court's gatekeeping function is "critical" and requires an "exacting analysis." Frazier, 387 F.3d at 1261 (citing Daubert and Kumho Tire). Furthermore, the reliability criterion of Rule 702 "remains a discrete, independent, and important

---

[12]    Plaintiff also cites Godwin v. CSX Transportation, Inc., No. CV513-134, 2015 WL 4940346 (S.D. Ga. Aug. 18, 2015), but that case is distinguishable for the same reason. In Godwin, the expert reliably applied his experience in the railroad industry to the facts of the case in order to form opinions that were directly connected to his years of experience, and, most importantly, he explained how that relevant experience connected to the opinions. Godwin, 2015 WL 4940346, at *4 ("[A] review of [the expert's] reports reveals how his experience led him to his opinions."). Plaintiff has not demonstrated the same connection between Dr. Ellin's experience and his opinion.

[13]    Plaintiff also cites United States v. Rosin, No. 8:05-CR-143-T-24, 2006 WL 5334585 (M.D. Fla. Jan. 23, 2006), which is similar to Powell. Both cases dealt with a doctor reviewing slides and making diagnostic determinations based on years of experience doing just that, reviewing and analyzing patient slides. Accordingly, Rosin is distinguishable (and unpersuasive) for the same reasons as Powell.

requirement for admissibility." Dr. Ellin's opinion that Plaintiff's injuries were not self-inflicted are not sufficiently reliable, as that term is used in Rule 702 and <u>Daubert</u>. Dr. Ellin's opinion is based on his commonplace observations about the locations of Plaintiff's injuries and Plaintiff's inability to reach those locations, not his experience in the medical field or any other specialized knowledge, theory, or methodology. Accordingly, Plaintiff has failed to meet his burden in demonstrating Dr. Ellin's opinion is admissible. Therefore, the Court **GRANTS** this portion of Defendants' Motion and excludes Dr. Ellin's opinion that Plaintiff's injuries were caused by an attack on Plaintiff and were not the result of self-inflicted harm.

### 2. *Helpfulness*[14]

Defendants also argue Dr. Ellin's opinion would not assist the trier of fact, as required by Rule 702. Doc. 118 at 10–11. The thrust of Defendants' argument is that Dr. Ellin did not apply any scientific knowledge, formal methodology, or specialized expertise in forming his opinion; instead, he viewed photographs of Plaintiff's injuries and made the subjective determination that Plaintiff could not have inflicted injuries at those locations. <u>Id.</u> at 11. Plaintiff disagrees, arguing that Dr. Ellin relied on his medical experience to form his opinion, and "the average citizen does not fully appreciate how the extent and placement of bruising can indicate whether the bruising was self-inflicted or caused by a third party." Doc. 126 at 10–11.

Rule 702 permits experts to make conclusions based on competing versions of the facts, but those conclusions must still assist the trier of fact by explaining something that is "beyond the understanding of the average lay person.'" <u>Jackson v. Catanzariti</u>, No. 6:12-CV-113, 2019

---

[14] Because Dr. Ellin's opinion is not sufficiently reliable, Defendants' Motion is due to be granted on this ground alone. For the sake of completeness, the Court addresses the helpfulness requirement of Rule 702, as well. However, the Court declines to address Defendants' alternative arguments under Rule 403.

WL 2098991, at *10 (S.D. Ga. May 14, 2019) (citing <u>Frazier</u>, 387 F.3d at 1262). Expert testimony generally will not help the trier of fact "when it offers nothing more than what lawyers for the parties can argue in closing arguments." <u>Id.</u> (quoting <u>Cook</u>, 402 F.3d at 1111).

Dr. Ellin's opinion is not helpful because it fails to explain something "beyond the understanding of the average lay person." <u>Frazier</u>, 387 F.3d at 1262. As explained above, Dr. Ellin's opinion is based on the ordinary observation that it is unlikely Plaintiff inflicted his own injuries because he could not reach the location of some of those injuries. Any average lay person could make the same observation and reach the same opinion.[15] Moreover, Dr. Ellin's opinion on this topic "offers nothing more than what lawyers for the parties can argue in closing arguments." <u>Jackson</u>, 2019 WL 2098991, at *10 (quoting <u>Cook</u>, 402 F.3d at 1111). Accordingly, Plaintiff has failed to meet his burden of demonstrating Dr. Ellin's opinion would assist the trier of fact, and Defendants' Motion is **GRANTED** for this additional reason.

## III. Plaintiff's Motion for Hearing

Plaintiff requests a hearing Defendants' Motion for Partial Summary Judgment, doc. 115, and Motion to Exclude the Expert Causation Opinion of Richard Ellin, M.D., doc. 118. Doc. 127. Having considered the parties' fully briefed submissions on these matters, the Court finds a hearing would not be helpful and is unnecessary. Accordingly, the Court **DENIES** Plaintiff's Motion for Hearing.

### CONCLUSION

For the forgoing reasons, I **GRANT** Defendants' Motion to Exclude and **DENY** Plaintiff's Motion for Hearing. I also **RECOMMEND** the Court **GRANT in part as**

---

[15] The Court expresses no opinion on the strength of such an observation and opinion or the relative strength of the argument at trial. Rather, the Court's inquiry is focused whether Dr. Ellin—cloaked in the designation of "expert"—explains something that is beyond the understanding of the average lay person.

**unopposed** Defendants' Partial Motion for Summary Judgment and **DISMISS** Plaintiff's claims against Defendants Hart and Griffin.   I **RECOMMEND** the Court **DENY in part** Defendants' Partial Motion for Summary Judgment regarding monetary damages for his excessive force claim against Defendant Smith.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.   Any objections asserting that the Magistrate Judge failed to address any contention raised in the Motion must also be included.   Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).   A copy of the objections must be served upon all other parties to the action.   The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.   Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.   Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 13th day of March, 2020.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA